**RECORD NOS. 15-2547(L); 16-1017; 15-2569 (XAP)**

In The

# United States Court of Appeals

### For The Fourth Circuit

## COLUMBIA GAS TRANSMISSION, LLC,

*Plaintiff – Appellant/Cross-Appellee*,

v.

## 76 ACRES, MORE OR LESS, IN BALTIMORE AND HARFORD COUNTIES, MARYLAND; LAMBERT G. BOYCE, JR.; LEDLEY BYRD BOYCE; ROBERT E. BOYER, JR.; MARGARET H. KENNEY,

*Defendants – Appellees/Cross-Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE**

———————————

**BRIEF OF APPELLANT/CROSS-APPELLEE**

———————————

Richard D. Holzheimer, Jr.
Anastasia P. Cordova
MCGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
Tysons Corner, Virginia 22102
(703) 712-5000

*Counsel for Appellant/*
  *Cross-Appellee*

Tennille J. Checkovich
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
(804) 775-4758

*Counsel for Appellant/*
  *Cross-Appellee*

Jessica D. Fegan
MCGUIREWOODS LLP
2001 K Street NW, Suite 400
Washington, DC 20006-1040
(202) 857-1728

*Counsel for Appellant/*
  *Cross-Appellee*

Arnold M. Weiner
Barry L. Gogel
RIFKIN, WEINER, LIVINGTON,
  LEVITAN & SILVER, LLC
2002 Clipper Park Road, Suite 108
Baltimore, Maryland 21211
(410) 769-8080

*Counsel for Appellant/*
  *Cross-Appellee*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Plaintiff-Appellant Columbia Gas Transmission, LLC ("Columbia") states that Columbia Pipeline Group, Inc. is its parent company and it owns more than ten percent of Columbia's stock.  Columbia further states that Columbia Energy Group, Inc. is the sole member of Columbia Gas Transmission, LLC and that Columbia Energy Group, Inc. is a wholly owned subsidiary of Columbia Pipeline Group, Inc.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................i

TABLE OF AUTHORITIES .............................................................. iii

INTRODUCTION.....................................................................1

JURISDICTIONAL STATEMENT ..........................................................2

ISSUES PRESENTED .................................................................3

STATEMENT OF THE CASE ............................................................3

I.     Condemnation and Possession of the Relevant Easements............................3

II.    Pre-Trial Motions and Hearings. ...............................................6

III.   Trial..................................................................7

IV.    Verdict and Motion for New Trial..............................................13

SUMMARY OF THE ARGUMENT .......................................................14

STANDARD OF REVIEW .............................................................16

I.     This Court reviews legal questions de novo....................................16

II.    This Court reviews evidentiary questions for an abuse of discretion. .........17

III.   This Court reviews a jury verdict for sufficiency of the evidence. .............17

ARGUMENT .......................................................................18

I.     The district court erred when it ignored the size and legal scope of the
       easements stated in the Complaint.............................................18

II.    Erroneous jury instructions permitted the jury to award double
       compensation to the Landowners and to compensate them for issues
       outside the district court's jurisdiction. .......................................22

       A.     The district court erroneously instructed the jury to evaluate the
              impact of physical damages to property outside of the taking
              and damages that arose after the condemnation................................24

       B.     Improper jury instructions resulted in double recovery to the
              Landowners. .......................................................28

III.   The district court abused its discretion when it refused to strike the
       testimony of the Landowners' expert. .......................................32

i

TABLE OF CONTENTS
(continued)

Page

IV.     The jury verdict cannot stand because insufficient evidence existed to
        support permanent and temporary severance damages. ...............................38

        A.     The Kenneys failed to offer expert testimony regarding loss of
               development potential and property value. ........................................40

        B.     Evidence offered in support of temporary severance damages
               on the Boyces' properties lacked probative value.............................42

        C.     The Landowners did not offer any evidence regarding the cost
               of repair of any construction issues...................................................44

CONCLUSION ...........................................................................................................45

ORAL ARGUMENT STATEMENT ...............................................................................45

# TABLE OF AUTHORITIES

Page(s)

### FEDERAL CASES

*Abraham v. Cnty. of Greenville, S.C.*,
  237 F.3d 386 (4th Cir. 2001) ...........................................................17

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
  217 F.3d 225 (4th Cir. 2000) ...........................................................16

*Benedi v. McNeil-PPC, Inc.*,
  66 F.3d 1378 (4th Cir. 1995) ...........................................................33

*Certain Underwriters at Lloyd's, London v. Sinkovich*,
  232 F.3d 200 (4th Cir. 2000) ...........................................................41

*Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*,
  276 F.3d 187 (4th Cir. 2002) ...........................................................16

*Cooper v. Smith & Nephew, Inc.*,
  259 F.3d 194 (4th Cir. 2001) ......................................................37, 38

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579, 113 S. Ct. 2786 (1993)................................6, 15, 32, 33

*E. Tenn. Nat. Gas Co. v. 3.04 Acres in Patrick Cty.*,
  No. 4:02-CV-00146, 2006 WL 197105 (W.D. Va. Jan. 24, 2006) ...................38

*First Nat'l Bank of Brunswick*,
  350 F.2d 606 (5th Cir. 1965) ...........................................................25

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136, 118 S. Ct. 512 (1997)..............................................17, 19

*Guardian Pipeline, LLC v. 295.49 Acres of Land, More or Less, in Brown Cnty.*,
  No. 08-C-0028, 2010 WL 3386582 (E.D. Wis. Aug. 24, 2010) ...........32, 35, 37

*Hardy Storage Co., LLC v. An Easement to Construct, Operate &
    Maintain 12-Inch & 20-Inch Gas Transmission Pipelines Across
    Properties in Hardy Cnty.*,
    No. 2:06CV7, 2009 WL 900171 (N.D. W.Va. Mar. 31, 2009).........................32

*Jones v. Reichert Jung, Inc.*,
    211 F. Supp. 2d 661 (D. Md. 2002)....................................................41

*Kimball Laundry Co. v. United States*,
    338 U.S. 1, 69 S. Ct. 1434 (1949)...............................................24, 42

*Leese v. Lockheed Martin Corp.*,
    6 F. Supp. 3d 546, 555 (D.N.J. 2014)................................................35

*Malone v. Microdyne Corp.*,
    26 F.3d 471 (4th Cir. 1994) .........................................................17

*Marsh v. W.R. Grace & Co.*,
    80 Fed. Appx. 883 (4th Cir. 2003)...................................................37

*McEwen v. Balt. Wash. Med. Ctr. Inc.*,
    404 Fed. Appx. 789 (4th Cir. 2010)..................................................37

*Old Dominion Land Co. v. United States*,
    269 U.S. 55 (1925)...................................................................25

*Price v. City of Charlotte, N.C.*,
    93 F.3d 1241 (4th Cir. 1996) ........................................................18

*Singer v. Dungan*,
    45 F.3d 823 (4th Cir. 1995) .........................................................18

*Spell v. McDaniel*,
    824 F.2d 1380 (4th Cir. 1987) .......................................................16

*Trans Energy, Inc. v. EQT Prod. Co.*,
    743 F.3d 895 (4th Cir. 2014) ........................................................16

*United States ex rel. TVA v. Additional Rights*,
    3:07-cv-00650, 2011 U.S. Dist. LEXIS 137787 (M.D. Tenn. Nov.
    30, 2011) ........................................................................33, 35

*United States v. 10,031.98 Acres of Land, More or Less, Situate in Las Animas Cnty.*,
   850 F.2d 634 (10th Cir. 1988) ....................................................................17, 38

*United States v. 101.88 Acres of Land, More or Less, Situated in St. Mary Parish*,
   616 F.2d 762 (5th Cir. 1980) ...........................................................21, 22, 25, 27

*United States v. 1440.35 Acres of Land, Situate in Charles Cnty.*,
   438 F. Supp. 1070 (D. Md. 1977)..................................................................18, 27

*United States v. 2.33 Acres of Land, More or Less, Situate in Wake Cnty.*,
   704 F.2d 728 (4th Cir. 1983) ...............................................................................30

*United States v. 21.54 Acres of Land, More or Less, Situate in Marshall Cnty.*,
   491 F.2d 301 (4th Cir. 1973) .......................................................................18, 22

*United States v. 3,317.39 Acres of Land, More or Less, in Jefferson Cnty.*,
   443 F.2d 104 (8th Cir. 1971) .......................................................................19, 27

*United States v. 38.60 Acres of Land, More or Less, Situate in Henry Cnty.*,
   625 F.2d 196 (8th Cir. 1980) ................................................................26, 27, 28

*United States v. 5.324 Acres of Land*,
   79 F. Supp. 748 (S.D. Cal. 1948)........................................................................21

*United States v. 79.20 Acres of Land, More or Less, Situated in Stoddard Cnty.*,
   710 F.2d 1352 (8th Cir. 1983) ....................................................25, 26, 27, 29, 30

*United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cnty.*,
   680 F.2d 388 (5th Cir. 1982), *aff'd by United States v. 5.00 Acres of Land, More or Less, Situate in Orange Cnty., State of Texas*,
   731 F.2d 1207 (5th Cir. 1984) ............................................................................31

*United States v. 97.19 Acres of Land, More or Less, Located in*
*Montgomery, Washington, & Allegheny Counties*,
582 F.2d 878 (4th Cir. 1978) ......................................................24, 25

*United States v. Banisadr Bldg. Joint Venture*,
65 F.3d 374 (4th Cir. 1995) ..............................................................24

*United States v. Bolden*,
325 F.3d 471 (4th Cir. 2003) ............................................................17

*United States v. Brondum*,
272 F.2d 642 (5th Cir. 1959) ............................................................22

*United States v. Gen. Motors Corp.*,
323 U.S. 373, 65 S. Ct. 357 (1945)...................................................44

*United States v. Miller*,
317 U.S. 369, 63 S. Ct. 276 (1943)..............................................25, 40

*United States v. Reynolds*,
397 U.S. 14, 90 S. Ct. 803 (1970)................................................18, 20

*United States v. Winnebago Tribe of Nebraska*,
542 F.2d 1002 (8th Cir. 1976) ..........................................................27

*Zarlengo v. Comm'r of Internal Revenue*,
2014 WL 3907047 (T.C. Aug. 11, 2014) ..........................................35

**State Cases**

*Brannon v. State Rds. Comm'n*,
305 Md. 793, 506 A.2d 634 (1986) ...................................................39

*Exxon Mobil Corp. v. Ford*,
204 Md. App. 1, 40 A.3d 514 (2012) ................................40, 41, 42, 43

*Exxon Mobil Corp. v. Ford*,
433 Md. 426, 71 A.3d 105 (2013) ................................................40, 41

*Hall v. Lovell Regency Homes Ltd. P'ship*,
121 Md. App. 1, 708 A.2d 344 (1998) .........................................39, 40

*Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd.*
*P'ship*,
109 Md. App. 217, 674 A.2d 106 (1996) ...........................................41

*Ray v. Mayor of Baltimore*,
430 Md. 74, 59 A.3d 545 (2013) .....................................................41

*Silverman v. Borough of Allenhurst*,
2013 WL 2502974 (N.J.T.C. June 7, 2013) ....................................36

*State Rds. Comm'n v. Kuenne*,
240 Md. 232, 213 A.2d 567 (1964) .................................................43

**Statutes**

15 U.S.C.
§ 717f(h)..........................................................................................2

28 U.S.C.
§ 1291..............................................................................................2
§ 1331..............................................................................................2

**Rules**

Fed. R. Civ. P.
Rule 71.1 ........................................................................................18

Fed. R. Evid.
Rule 701 .........................................................................................40
Rule 702 .........................................................................................33

**Other Authorities**

The Appraisal Institute's *The Appraisal of Real Estate* ........................................33

Integra Realty Resources, *Pipeline Impact to Property Value and
Property Insurability*, INGAA Foundation, Feb. 2016 ......................................37

# INTRODUCTION

The law governing eminent domain proceedings is clear: in a trial to determine just compensation for the taking of property, a jury may award compensation only for the taking defined by the condemnor and any impact to the remainder of the property, nothing more.  Ignoring these principles and openly expressing that it "may be wrong on this," the district court directed the _jury_ to determine the legal, temporal, and physical scope of the taking, expanded beyond the scope of the taking the compensation the landowners could receive, and instructed the jury to base its verdict on insufficient and improper evidence.

Despite clear limits on its jurisdiction, the district court allowed the jury to determine whether Columbia took more property and attendant legal rights than the easements described in Columbia's pleadings.  Through erroneous jury instructions, the district court further exceeded the limits of its jurisdiction by directing the jury to award compensation for physical harm to property outside of the easement areas and to provide double recovery for restoration issues.  The district court also committed a significant evidentiary error by failing to act as gatekeeper and strike unreliable expert testimony.

Because the district court exceeded its subject matter jurisdiction, the judgment cannot stand.  Without correction, the district court's errors threaten to reverberate through future cases and undermine the integrity of eminent domain

proceedings in this Circuit. As a result, there is only one just and legally correct disposition: a reversal of the district court's judgment and remand for a new trial.

## JURISDICTIONAL STATEMENT

The district court exercised subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 and Section 7f of the Natural Gas Act, 15 U.S.C. § 717f(h) because: (a) Columbia holds a Certificate of Public Convenience and Necessity for, among other things, the construction, operation, and maintenance of a natural gas pipeline within the State of Maryland; (b) Columbia was unable to reach an agreement as to compensation with the Landowners[1] for the easements and other interests necessary for the construction, operation, and maintenance of the pipeline; (c) the property to be taken is located within the District of Maryland; and (d) the value of the easements exceeds $3,000.00. (Compl., JA at 561.)

The district court's July 27, 2015, judgment against Columbia, as amended by orders dated September 11, 2015, and November 9, 2015, is a final, appealable order. (Judgment, JA at 2147, 2154, 2226-27.) Columbia filed a timely Notice of Appeal on December 9, 2015. (Notice of Appeal, JA at 2229-31.) This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1291.

---

[1] The Appellees in this case, listed as follows, are the owners of the real property at issue: Lambert G. Boyce and Ledley Byrd Boyce (the "Boyces"); Robert E. Boyer, Jr. ("Mr. Boyer"); and Margaret H. Kenney ("Mrs. Kenney"). After this appeal was filed, Wilfred L. Turk and Nancy A. Turk (the "Turks") were dismissed by agreement. (Stipulation of Dismissal, JA at 2245-47.) The Appellees are collectively referred to as the "Landowners."

2

## ISSUES PRESENTED

1.      Did the trial court err when it exceeded its subject matter jurisdiction by ignoring the legal scope and size of easements stated in the Complaint in Condemnation and allowed the jury to award compensation on entirely different and undefined easements?

2.      Did errors in the jury instructions permit the jury to award double compensation to the Landowners?

3.      Did the trial court abuse its discretion when it refused to strike the testimony of the Landowners' expert, Jennifer Hanna?

4.      Was there insufficient evidence to support the jury award of both permanent and temporary severance damages?

## STATEMENT OF THE CASE

### I.      Condemnation and Possession of the Relevant Easements.

Columbia is an interstate natural gas company, transporting natural gas pursuant to authorization granted by and subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC").  (Compl., JA at 561.)  On November 21, 2013, FERC issued to Columbia a Certificate of Public Convenience and Necessity ("FERC Certificate") authorizing Columbia "to construct and operate the proposed facilities" comprising an extension of a natural gas pipeline ("Line MB") in Baltimore and Harford Counties.  (FERC Certificate, JA at 101.)  The Landowners own real property in Harford County, Maryland, and Columbia has

3

sought to acquire easements over and through their properties for the purpose of constructing, operating, and maintaining the proposed extension of Line MB. (Compl., JA at 561-64.)

Unable to obtain the necessary easements by agreement, on January 15, 2014, Columbia filed its Complaint in Condemnation, which it amended on June 18, 2015 (collectively, the "Complaint"). (*Id.*, JA at 35-160; Am. Compl., JA at 560-634.) The Complaint defined the physical size, location, and legal rights associated with the permanent and temporary easements Columbia sought to acquire on the Landowners' properties as follows:

> The temporary construction easements, as fully described below, are twenty-five (25) to fifty (50) feet on either side of and adjoining the permanent easements and serve the purpose of enabling Columbia to construct Line MB or to later relocate the pipeline or lay additional pipelines and to conduct all activities incident thereto, including restoration or clean-up activities.
>
> The permanent easements to be taken on the Properties include a permanent and exclusive easement and right-of-way to construct, operate, maintain, replace, repair, remove or abandon Line MB, for a total of fifty feet (50') in width, measured twenty five feet (25') to the center of Line MB on each side thereof, unless and to the extent that (a) Line MB is installed nearer than twenty-five (25) feet to a boundary of the premises, in which case the right-of-way area shall extend from the boundary on the near side to twenty-five (25) feet on the other side of the pipeline, or (b) Line MB is installed on an adjoining tract of land, in which case the right-of-way area shall extend from the boundary into landowner's lands to a point that is twenty-five (25) feet from the pipeline, as described more fully on the maps attached hereto, as well the right to change the location of the installed Line MB as may be necessary or advisable as the result of any conditions or events beyond Columbia's control, such as highway

4

construction or relocation, coal mining activities, ground slips or floods, or the like.

(Compl., JA at 564-65.)

Columbia also filed maps showing the location and size of the permanent and temporary easements taken on each property and provided the following specific measurements for each easement:

- Boyce Property: permanent easement - 0.68 acres; temporary easement - 0.65 acres
- Boyer Property: permanent easement  - 0.67 acres; temporary easement - 0.50 acres
- Kenney Property: permanent easement - 0.9965 acre; temporary easement - 0.4765 acres
- Turk Property: permanent easement 0.55 acres;  temporary easement – 0.78 acres

(*Id*., JA at 627-32.)

On June 27, 2014, the district court granted Columbia partial summary judgment and affirmed Columbia's authority to condemn the easements defined in the Complaint.  (Summ. J. Order, JA at 367-69.)  The district court also addressed legal and factual issues related to Columbia's motion for immediate possession of those easements and decided that, upon determination of appropriate security for the Landowners, it would grant immediate possession.  (*Id.*)

5

On August 4, 2014, the district court granted Columbia's motion for immediate possession of the easements on the Landowners' properties.[2] (Possession Order, JA at 372-88.)  Consistent with the Complaint, this order described the proposed taking and set forth the easements Columbia sought to acquire, including their physical size, maps depicting their location, and the legal rights taken for both the permanent and temporary easements.  (*Id.*)  Pursuant to this order, Columbia began constructing Line MB on the Landowners' properties.

## II.   Pre-Trial Motions and Hearings.

Prior to trial, Columbia filed several motions *in limine*, seeking to resolve certain evidentiary matters concerning the scope of claims that would be allowed at trial, as well as the admissibility of certain evidence.  (Docket, JA at 19-21.) Columbia's motions included a motion to exclude the testimony of the Landowners' expert, Jennifer Hanna, and a request to exclude compensation claims that exceeded the district court's subject matter jurisdiction.  (*Id.*)

In its motion to exclude expert testimony, Columbia asserted that Ms. Hanna's testimony failed under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), because it was based on improper methodology and unreliable evidence.  (JA at 451-509.)  Although Columbia's motion focused solely

---

[2]    The district court granted Columbia partial summary judgment and immediate possession of the easements on Mr. Boyer's property through a separate order issued on August 20, 2014.  (Boyer Possession Order, JA at 389-91.)

on Ms. Hanna's methodology, on March 27, 2015, the district court denied the motion, indicating that questions concerning a witness's qualifications should be explored at trial.[3]  (Order, JA at 509.)

During a motions hearing on July 2, 2015, the district court also denied Columbia's motion to exclude improper claims.  In contravention of clear principles prohibiting it from modifying the stated taking, the district court ruled that the size of Columbia's easements, among other compensation issues not properly within the court's jurisdiction, would be a factual issue for trial.  (Hr'g Tr., JA at 681-83 ("If you took more than you said you were going to, I don't care what the law is, that's what trials are about.") [47:1 – 49:6].)

## III.    Trial.

Trial began on July 16, 2015, at a time when Columbia was restoring the Landowners' properties after completing construction of the pipeline.  (Trial Tr., JA at 1371 [655:17-25].)  Mr. Turk, the Boyces, the Kenneys, and Mr. Boyer testified as landowners and fact witnesses, and the Landowners' designated expert Jennifer Hanna provided testimony concerning the purported amount of just compensation owed to the Landowners.  On behalf of Columbia, Michael

---

[3]    On March 18, 2015, the district court issued a paperless notice that the Judge J. Frederick Motz had been assigned as the trial judge for this matter in place of Judge Ellen Hollander.  (Docket, JA at 23.)

McClain, a project land manager, testified as a fact witness, and Oakleigh Thorne provided expert testimony regarding the value of the easements Columbia took.

Mr. McClain testified on numerous topics, including the need to expand Line MB, FERC's approval of the project, and Columbia's modifications to the project in light of public concerns. (*Id*., JA at 1313-18; 1323-27 [597:8-602:3; 607:21-611:14].) He also identified the projected route of the pipeline, as well as the location and dimension of the easements on the Landowners' properties. Through Mr. McClain's testimony, the district court admitted plats and pictures depicting the proposed easements.[4] (*Id*., JA at 1319-22; 1359-70 [603:23-606:4; 643:17-654:13]; Trial Exs., JA at 3414-3434.) Mr. McClain testified that the permanent easements on the Landowners' properties were fifty feet wide, with an additional twenty-five feet for the temporary easement. (Trial Tr., JA at 1343-44 [627:11-628:24].)

Mr. McClain also testified at length regarding the restoration process that was ongoing at the time of trial and indicated that Columbia would complete restoration by August 2015. (*Id*., JA at 1371-79 [655:17-663:24].) Finally, Mr. McClain described Columbia's plans to repair the areas inside and outside of the

---

[4]     The district court, however, refused to admit the August 4, 2014, Order containing the legal descriptions of the easements and confirming the dimensions of land taken. (Trial Tr., JA at 1328-30 [612:3-614:1].)

easements during the restoration process. (*Id.*, JA at 1379-90 [663:24-674:5], JA at 1492 [776:9-11].)

Mr. Thorne, Columbia's expert witness on land value, based his opinion on comparable sales of vacant land and determined that all of the subject properties were worth $66,100 per acre. (*Id.*, JA at 1601-03 [885:25-888:7].) He also evaluated the proposed restrictions on the Landowners' use of the properties and opined that the pipeline contributed to a 50% diminution in property value within the permanent easement area. (*Id.*, JA at 1620-24 [904:5-908:2].) Mr. Thorne also testified that he valued compensation for the temporary easements based on hypothetical land lease terms and calculated terms based on a one-year lease at 12% value. (*Id.*, JA at 1635-36 (confirming that different lease terms would apply for a larger easement area) [919:2-920:7].)

Based on these factors and the descriptions of the easements in the Complaint, Mr. Thorne testified that the landowners were entitled to the following compensation: Boyce—$27,650 ($24,474 for permanent easement and $5,156 for temporary easement); Boyer—$24,589 ($21,440 for permanent easement and $3,149 for temporary easement); Kenney—$37,100 ($33,283 for permanent easement and $3,280 for temporary easement); and Turk—$ 24,400 ($18,178 for permanent easement and $6,187 for temporary easement). (*Id.*, JA at 1638-42 [922:23-926:7].)

9

Finally, based on the available studies and his determination that the pipeline did not affect the Landowners' use of the properties, Mr. Thorne opined that there were no damages to the remainder of the properties. (*Id.*, JA at 1642-43; 1639-51; 1653-54 [926:22-927:16; 923:25-935:22; 937:11-938:6].)

Mr. Turk testified that Columbia's construction started around August 2014 and the Turks could not use the front pasture due to Columbia's restoration activity (*Id.*, JA at 811-12, 817 [95:4-96:1; 101:4-7].) Based on this, Mr. Turk believed that the temporary easement on his property included the entire seven-acre pasture and would last at least a year and a half. (*Id.*, JA at 822-27 [106:22-108:4; 109:15-111:9].) As to compensation owed for the permanent easement and for damages to the remainder, Mr. Turk testified that he relied on expert testimony. (*Id.*, JA at 831, 835-36 [115:15-21; 119:25-120:8].)

Mrs. Boyce testified, among other things, about the impact of the construction on the Boyces' property, including alleged damages to areas outside of the easements and the need to temporarily relocate the Boyces' horses to another part of the property. (*Id.*, JA at 1057-58; 1075-76; 1078 [341:20-342:18, 359:25-360:10; 362:2-18].) Mr. Boyce opined on the pipeline's financial impact on the property. He agreed with Ms. Hanna's opinion as to the value of the permanent easement, but believed that the remainder of the Boyces' property suffered a 40% diminution in value, or a loss of $365,415. (*Id.*, JA at 1135-37; 1139 [419:17-

10

421:18; 423:1-7].)  As to the temporary easement, Mr. Boyce requested $182,500, which amount represented 30 months' worth of horse boarding expenses.  Mr. Boyce admitted that this number was based on pre-construction settlement discussions with Columbia.  (*Id*., JA at 1141-43 [425:22-427:9].)

Mrs. Kenney owns two properties at issue in this case: her homestead property (Lot 2) and an adjoining vacant property (Lot 3).  Mrs. Kenney and her husband testified that Lot 3 is worthless due to the alleged inability to develop the property following construction of the pipeline.  (*Id*., JA at 1182; 1233-34 [466:8-18; 517:23-518:5].)  Her husband, Dr. Kenney, who does not own the subject property, opined that Lot 2 and Lot 3 sustained a 40% and 80% diminution in value, respectively—a percentage much higher than Ms. Hanna's calculation.[5] (*Id*., JA at 1237-39 [521:8-523:24].)

Ms. Hanna provided opinion testimony as to compensation owed for the permanent easements and any damages to the remainder but did not offer an opinion about compensation owed for the temporary easements.[6]  To determine the value of the permanent easements, Ms. Hanna relied on an easement valuation matrix and determined an 80% loss in value in the permanent easement areas.  (*Id*.,

---

[5]     Columbia moved to exclude Dr. Kenney's opinion on the value of the Kenney property because he does not own that property; however, the district court overruled the objection.  (Hr'g Tr., JA at 647-48 [13:5-14:7].)

[6]     Mr. Boyer testified that he concurred with Ms. Hanna's opinions as to the compensation owed for his property.  (Trial Tr., JA at 1261 [545:1-17].)

11

JA at 880-83 [164:3-5; 165:1-167:13].)  Based on property values and the sizes of corresponding permanent easements in the matrix, Ms. Hanna calculated compensation for the permanent easements as follows: Boyce— $51,462, Boyer— $38,973, Kenney (Lot 2)—$48,431, Kenney (Lot 3)—$34,200, and Turk— $29,084.  (*Id.*, JA at 883-85; 919-20; 944; 953; 957-58 [167:18-169:3, 203:23-204:2; 228:18-22; 237:16-18; 241:23-242:2].)

To determine compensation for any damages to the remainder of the Landowners' properties, Ms. Hanna conducted a paired sales analysis based on three sets of Maryland properties where one had a pipeline easement and the other did not.  (*Id.*, JA at 885-87; 889-90 [169:8-171:3; 173:24-174:2].)  After adjusting the values to account for other differences between the properties, Ms. Hanna concluded that a natural gas pipeline diminished property value by 16.2% for Pair A, 16.7% for Pair B, and 25.7% for Pair C.  (*Id.*, JA at 894-900 [178:7-179:25; 180:1-182:22; 182:24-184:24].)

Although the properties in Pair C consisted of an estate sale and a foreclosure sale, which Ms. Hanna admitted do not always represent fair market value, Ms. Hanna used only Pair C and found a 25% diminution in value to the remainder of the Landowners' properties.  (*Id.*, JA at 901-03; 998-99 [185:2-186:8; 187:5-19; 282:21-283:4].)  Further, Ms. Hanna conceded on cross-examination that the burdened property in Pair C had two pipelines in a 75-foot wide permanent

12

easement.  (*Id.*, JA at 999-1001 [283:16-285:6].)  Ms. Hanna also testified that she did not rely on studies or articles and rejected studies that conflicted with her conclusion.  (*Id.*, JA at 983-84; 988 [267:17-268:21; 272:3-9].)  Based on property value and size, Ms. Hanna opined that damages to the remainder were as follows: Boyce—$228,385, Boyer—$119,207, Kenney (Lot 2)—$121,642, Kenney (Lot 3)—$37,950, and Turk—$264,229.[7]  (*Id.*, JA at 905; 924; 946; 954; 958 ([189:7-10; 208:15-19; 230:1-6, 238:18-23; 242:10-12].)

## IV.    Verdict and Motion for New Trial.

The jury rendered its verdict on July 24, 2015.  (*Id.*, JA at 2136-39 [1420:13-1423:21]; Verdict, JA at 2152-53.)  On July 27, 2015, the district court entered a judgment in favor of the Landowners in the following amounts[8]:

(1) the Boyces—$246,331 ($29,216 for the permanent easement; $50,104 for the temporary easement; and $167,011 for damages to remainder);
(2) Mr. Boyer—$127,964 ($27,872 for the permanent easement; $6,144 for the temporary easement; and $93,948 for damage to remainder);

---

[7]    Mr. Thorne identified numerous errors in Ms. Hanna's paired sales analysis, including her failure to account for all differences in the paired properties, failure to verify the sales with the buyers to determine how the presence of the pipeline impacted their decision to purchase, and failure to select properties that represent fair market value.  (Trial Tr., JA at 1658-59; 1661-80 [942:14-943:17; 945:22-964:6].)

[8]    On September 11, 2015, and November 9, 2015, the district court granted motions to amend the judgment to account for amounts previously paid to the Landowners and to set the terms of pre-judgment interest.  (Orders, JA at 2154, 2226-27.)

(3) Mrs. Kenney—$181,575 ($43,268 for the permanent easement; $7,639 for the temporary easement; and $130,668 for damages to the remainder); and

(4) the Turks—$320,187 ($23,631 for the permanent easement; $111,048 for the temporary easement; and $185,508 for damages to the remainder).

(Judgment, JA at 2147, 2154, 2226-27; Verdict, JA at 2152-53.)

On November 6, 2015, the district court heard argument on Columbia's motion for new trial, which highlighted the errors addressed herein and urged the district court to rehear the case. (Hr'g Tr., JA at 2156-2213 [2:2 - 59:25].) On November 9, 2015, the district court denied Columbia's motion in a paperless order, confirming its oral ruling at the hearing. (Docket, JA at 31.) Columbia filed its timely Notice of Appeal on December 9, 2015. (Notice of Appeal, JA at 2229-31.) The Landowners subsequently filed Notices of Cross Appeal. (Notices of Cross Appeal, JA at 2234-35, 2239-41.)

## SUMMARY OF THE ARGUMENT

This Court should reverse the district court's judgment for four reasons. First, the district court exceeded its jurisdiction when it allowed the jury to consider easements that were significantly larger in size and scope than the taking asserted in the Complaint. Eminent domain jurisprudence does not allow a district court to modify the taking described by the condemnor in its pleadings. Indeed, cases from this circuit and beyond show that the judiciary may not inject a factual

14

dispute into the proceedings concerning the scope of the taking. The district court's actions in violation of this principle constitute a reversible error of law.

Second, the district court improperly instructed the jury to consider damages to the remainder caused by Columbia's construction work within the easements. Under federal precedent, such damages are not severance damages and cannot be included in the award of just compensation.[9] Additionally, the district court's instructions allowed the Landowners to recover double compensation, including two severance awards for *both* permanent and temporary easements. While the district court assured the jury that Columbia would restore the Landowners' properties, it also instructed the jury to award compensation for the same issues Columbia was working to remedy. The district court's instructions rely on misinterpretations of law and necessitate a new trial.

Third, the district court committed a prejudicial evidentiary error and, as a result, abused its discretion, when it refused to strike the testimony of the Landowners' expert. Because the expert did not perform a sufficiently reliable paired-sales analysis in calculating damages to the remainder, her opinion did not meet the *Daubert* criteria and should have been excluded.

Lastly, the district court erred in affirming the jury's verdict because the verdict was based on insufficient and incompetent evidence. Although the

---

[9]    If any such damages do exist, the Landowners must allege them in a separate proceeding.

Landowners did not offer expert testimony on issues such as the loss of development potential and the value of temporary easements, and gave unsupported lay testimony concerning severance damages and remediation of construction issues, the district court allowed the jury to consider these speculative issues in reaching its verdict. Because no substantial evidence existed in support of the jury's award, the district court should not have entered a judgment against Columbia in the amount of that award.

Each one of these errors necessitates a new trial. Therefore, this Court should reverse the erroneous decisions of the district court, vacate the judgment, and remand for further proceedings.

<u>**STANDARD OF REVIEW**</u>

## I.    **This Court reviews legal questions *de novo*.**

This Court reviews questions of law, including whether the district court exceeded its subject matter jurisdiction, *de novo*. *See Trans Energy, Inc. v. EQT Prod. Co.*, 743 F.3d 895, 900 (4th Cir. 2014); *see also Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191 (4th Cir. 2002) (applying *de novo* standard to dispute concerning subject matter jurisdiction).

This Court also "review[s] *de novo* the claim that jury instructions fail to correctly state the law." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 235 (4th Cir. 2000). This Court must reverse if it concludes "that a particular jury

instruction must necessarily have caused the jury to act in complete ignorance of, or to have misapplied, fundamentally controlling legal principles to the inevitable prejudice of [Columbia]." *Spell v. McDaniel*, 824 F.2d 1380, 1399 (4th Cir. 1987). The jury instructions "must be construed in light of the whole record," and judgment must be reversed "if the error is determined to have been prejudicial, based on a review of the record as a whole." *Abraham v. Cnty. of Greenville, S.C.*, 237 F.3d 386, 393 (4th Cir. 2001) (citations omitted).

## II.    This Court reviews evidentiary questions for an abuse of discretion.

For an evidentiary question, the standard of review is abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S. Ct. 512, 517 (1997). The abuse of discretion standard also applies to errors concerning the use of expert testimony. *See id.* at 141, 118 S. Ct. at 517.

## III.    This Court reviews a jury verdict for sufficiency of the evidence.

In reviewing the sufficiency of evidence, a verdict can be upheld only if there is substantial evidence to support it. *United States v. Bolden*, 325 F.3d 471, 485 (4th Cir. 2003). In determining whether sufficient evidence supports the award of just compensation, this Court reviews the evidence, and all reasonable inferences to be drawn therefrom, in favor of the Landowners. *See Malone v. Microdyne Corp.*, 26 F.3d 471, 475 (4th Cir. 1994).

17

This Court must set aside a condemnation judgment where the judgment is "clearly erroneous, based on a misapplication of the law, unsupported by the evidence or contrary to the clear weight of the evidence." *See United States v. 10,031.98 Acres of Land, More or Less, Situate in Las Animas Cnty.*, 850 F.2d 634, 635 (10th Cir. 1988) (citations omitted). While this Court respects jury verdicts, it may not be "a rubber stamp convened merely to endorse the conclusions of the jury, but rather [it has] a duty to reverse the jury verdicts if the evidence cannot support it." *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249-50 (4th Cir. 1996) (citing *Singer v. Dungan*, 45 F.3d 823, 829 (4th Cir. 1995)).

**ARGUMENT**

**I.     The district court erred when it ignored the size and legal scope of the easements stated in the Complaint.**

Rule 71.1 of the Federal Rules of Civil Procedure governs eminent domain procedure in federal courts and mandates that "except for the single issue of just compensation, the trial judge is to decide all issues, legal and factual, that may be presented." *United States v. Reynolds*, 397 U.S. 14, 19, 90 S. Ct. 803, 806-07 (1970) (interpreting predecessor of Rule 71.1). Under Rule 71.1, the condemnor must file a complaint that, among other things, describes the affected property and the rights sought. FED. R. CIV. P. 71.1(c)(2).

When an entity with the power of eminent domain "proceeds by formal condemnation, the general rule is that the extent of the take is a discretionary

18

decision for the condemning authority which may not be modified by the judiciary." *United States v. 21.54 Acres of Land, More or Less, Situate in Marshall Cnty.*, 491 F.2d 301, 304 (4th Cir. 1973); *United States v. 1440.35 Acres of Land, Situate in Charles Cnty.*, 438 F. Supp. 1070, 1073-74 (D. Md. 1977) (finding that landowners may not be awarded compensation for a taking greater that the easements described in condemnor's pleadings); *see also United States v. 3,317.39 Acres of Land, More or Less, in Jefferson Cnty.*, 443 F.2d 104 (8th Cir. 1971) (finding that judicial review of the extent of a take is improper).

Columbia's Complaint described the easements the jury had to value and the district court's August 4, 2014, Order confirmed Columbia's possession of those easements. (Compl., JA at 565-66, 627-32; Order, JA at 372-88.) Rather than recognize Columbia's authority to delineate the proposed take, the district court refused to abide by the easements defined in the Complaint and the August 4, 2014, Order, concluding that "what was taken is what was taken, not what the Court . . . thought was going to be taken." (Trial Tr., JA at 1888 [1172:5-7].)[10] Indeed, the district court permitted the jury to decide the physical, temporal, and

---

[10]    This improper expansion of the district court's jurisdiction led to an evidentiary error when the district court excluded the August 4, 2014, Order, despite the fact that the Order confirmed the scope of the easements and rights granted to Columbia. ([1170:25 – 1172:8], JA at 1886-88.) Over Columbia's continuing objection, the district court stated that the August 4, 2014, Order would not define the scope of the property to be valued at trial. (*Id*.) The district court's refusal to admit the Order constitutes an abuse of discretion. *Gen. Elec.*, 522 U.S. at 141, 118 S. Ct. at 517.

19

legal scope of Columbia's easements. (*Id.*, JA at 1886-88 [1170:25 – 1172:8].) In doing so, the district court overstepped the bounds of its jurisdiction and should be reversed.

Instead of accepting Columbia's definitions of the easements, the district court allowed the Landowners to contest the size and duration of the temporary easements and permitted the jury to define the scope of those easements. (*See, e.g.*, *id.*, JA at 821-27; 1139-40 [105:7-106:2; 107:9-111:8; 423:23-424:13].) While no dispute existed concerning the size of the permanent easements, the district court specifically directed the jury to consider whether the temporary easements exceeded the sizes stated in the Complaint. (*Id.*, JA at 1637 (instructing the jury to determine "the land actually taken or the easement actually taken") [921:1-23].) The district court also instructed the jury that it would decide the length of the restoration in valuing the temporary easements.[11] (*Id.*, JA at 1935 [1219:7-9].)

As a result of the district court's directives and comments, the jury's award did not reflect the easements Columbia actually condemned. Consistent with the Complaint, Columbia's expert testified that the 0.65-acre temporary easement on the Boyces' property should have been valued at $5,156 and that the values of the

---

[11]    Because the Complaint did not define the duration of the temporary taking, the district court did not err by deciding this issue at trial. The district court did err, however, by allowing the *jury* to determine the duration of the temporary easements. *Reynolds*, 397 U.S. at 19, 90 S. Ct. at 806-07.

20

0.2-acre and 0.58-acre temporary easements on the Turks' property amounted to $1,586 and $4,601, respectively. (*Id.*, JA at 1641-42 [925:18-926:7].)

The district court, however, allowed Mr. Turk to argue that the temporary easements on his property spanned over the entire seven-acre front pasture, effectively increasing the size of those easements more than *sevenfold*.[12] (*Id.*, JA at 823-87 [107:9-111:8].) Based on this improper, unsupported expansion of the temporary easements, the jury awarded the Turks $111,048 for the temporary easements. (Verdict, JA at 2152-53.) Similarly, the jury awarded the Boyces $50,104 for the temporary easement, based on Mr. Boyce's lay testimony that the valuation should include $182,500 in horse boarding costs during construction and remediation. (Trial Tr. JA at 1141-43; 1974 [425:22-427:9; 1258:12-21].)[13] Given that the jury awarded amounts that were grossly incongruous with the size of the

---

[12]    While the Turks have been dismissed and would not participate in any new trial, the evidence that Mr. Turk presented at trial shows clearly how the district court allowed the jury to expand the size and scope of the easements.

[13]    By contrast, the jury awarded Mr. Boyer and Mrs. Kenney, neither of whom contested the temporary easement size on their property, $6,144 and $7,639, respectively, for easements that were similar in size to those on the Boyces' and the Turks' properties. (Verdict, JA at 2152-53.)

21

temporary easements defined in the Complaint, it is apparent that the jury

improperly considered a larger taking.  (Judgment, JA at 2147, 2154, 2226-27.)[14]

The district court lacked jurisdiction to modify the scope of Columbia's

easements described in the Complaint and the August 4, 2014, Order.  *See United*

*States v. 101.88 Acres of Land, More or Less, Situated in St. Mary Parish*, 616

F.2d 762, 768 (5th Cir. 1980) (affirming lower court's decision not to inject a

separate, factual issue into the condemnation, which would have been necessary to

resolve the question of whether the condemnor had taken additional property).  The

district court's actions in allowing the jury to expand the scope of the taking

beyond the descriptions in the Complaint and the August 4, 2014, Order are clear,

reversible errors of law.  *See 21.54 Acres of Land*, 491 F.2d at 304 (describing the

taking in a formal condemnation may not be modified by the judiciary).

A new trial is the proper remedy where the trial court inappropriately

expands the legal definition of a condemnor's taking.  *See United States v.*

---

[14]    In addition to being contrary to law, the district court's deviation from the
easements as described has significantly prejudiced Columbia in a practical sense.
Upon paying the judgment, Columbia will need to record a decree in the land
records of Harford County that describes the property interests taken.  If Columbia
paid the existing judgment and requested a decree of its property rights, the district
court would be unable to describe the rights the jury valued with any accuracy.
*See United States v. 5.324 Acres of Land,* 79 F. Supp. 748, 763 n.10 (S.D. Cal.
1948) ("One of the jurisdictional essentials of a proceeding is condemnation of the
judicial type is that the property sought to be taken shall be described in the
petition or complaint.  The description as contained in the judgment of
condemnation must follow that of the complaint or award.  This is the universal
rule.  Where there is a variance, judgment held void.") (citations omitted).

*Brondum*, 272 F.2d 642, 645-46 (5th Cir. 1959) (reversing judgment and ordering new trial where district court instructed jury that it could find a different easement than what condemnor sought to condemn). As a result, this Court should reverse the judgment and direct the district court to conduct a new trial as to compensation for the easements defined in the Complaint.

## II. Erroneous jury instructions permitted the jury to award double compensation to the Landowners and to compensate them for issues outside the district court's jurisdiction.

The district court's erroneous instructions regarding the scope of Columbia's easements and just compensation available to the Landowners allowed the jury to award the Landowners double recovery. As a result, this Court should reverse the judgment of the district court and remand for a new trial.

On several occasions throughout the trial, including during formal jury instructions, the district court explained (and at the same time questioned) its views of the compensation available to the Landowners as follows:

> But as to each property involved, you're being asked to determine the value of the property taken as part of the actual easement; that is, I think it's the pipeline, and I think it's 25 feet on each side, if I remember. That's number one.
>
> Number two, what's called a temporary easement, and I certainly -- *and I could be wrong on this.* Maybe I have -- because I know Mr. Thorne testified to the contrary, and he could be right. I just don't know. Temporary easement technically may only include the construction easement and things -- I want you all to consider, so that

23

to actually make it a little simpler, the temporary easement is the -- is the temporary effect upon the rental value of the property. ***That is in -- so that could be damage to the remainder, which I would have to break down, and temporary effects and permanent effects.*** And I just think that just makes it more complicated. So it's really the same thing. ***You are to consider any construction easements that's taken, plus any effect upon the rental value of the property for the period of rental.***

And the third item of damage as to each property is the effect, if any, of the existence of the pipeline upon the remaining value of the property.

(Trial Tr., JA at 1933-34 (emphasis added) [1217:19-1218:15].)  This formal instruction, as well as the district court's comments, erroneously expanded the scope of this case and caused the jury to reach a verdict in ignorance of eminent domain law.

> A.    *The district court erroneously instructed the jury to evaluate the impact of physical damages to property outside of the taking and damages that arose after the condemnation.*

In addition to improperly enlarging the physical and temporal scope of the temporary easements, the district court also instructed the jury to assess the temporary impacts of construction on the value of the Landowners' *entire* parcels, not just the portions affected by the temporary easements.  (*Id.*, JA at 1634 [918:3-16]).  Specifically, the district court chose to "expand[] that interpretation [of a temporary easement] to say all of the effects upon the remainder as well as upon land taken during the time of construction."  (*Id.*, JA at 1714-15 [998:24-999:1].)

24

Where there are permanent and temporary takings of easements, there are three types of damages a landowner can recover:  (1) the value of the land permanently taken; (2) value of the temporary use of the land temporarily taken; and (3) any devaluation of the remaining land due to presence of the easement (*i.e.*, severance damages or damage to the remainder).  *See United States v. 97.19 Acres of Land, More or Less, Located in Montgomery, Washington, & Allegheny Counties*, 582 F.2d 878, 881 (4th Cir. 1978) (citations omitted); *see also United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 378 (4th Cir. 1995) (citing *Kimball Laundry Co. v. United States*, 338 U.S. 1, 7, 69 S. Ct. 1434, 1438 (1949)).

Courts in this Circuit "measure[] damages as the fair market value of the parcel actually taken plus severance damages, if any, to the portion of the tract retained by the landowner, [where severance damages are] 'the difference in market value of the residue before and after taking.'" *97.19 Acres of Land*, 582 F.2d at 881 (quotations omitted).

Any harm to property outside of the easements, however, that is caused by the use of the land taken, is not compensable in an eminent domain proceeding. *See United States v. Miller*, 317 U.S. 369, 376, 63 S. Ct. 276, 281 (1943) ("[T]he Constitution has never been construed as requiring payment of consequential damages. . . ."); *see also 101.88 Acres of Land*, 616 F.2d at 769 (holding that

whether use of the condemned land results in physical harm to and a reduction in value of the remainder is outside the scope of condemnation).

Similarly, harms that arise after the date of taking fall outside of the district court's jurisdiction in a condemnation case. Federal courts cannot assess compensation for "damages [that] are speculative and certainly not ascertainable at the time of taking. Damages incurred after a taking are not compensable in a condemnation proceeding." *United States v. 79.20 Acres of Land, More or Less, Situated in Stoddard Cnty.*, 710 F.2d 1352, 1356 n.6 (8th Cir. 1983) (citing *Old Dominion Land Co. v. United States,* 269 U.S. 55, 65 (1925)); *see also First Nat'l Bank of Brunswick*, 350 F.2d 606, 608 (5th Cir. 1965) ("There must be a cutoff period in condemnation suits in order for the determination of fair compensation to all parties involved. Damages arising after the date of taking may actually amount to a taking, but Congress has provided other remedial rights for such eventualities.").

The district court's instructions concerning the temporary easements directed the jury to consider damages to the remainder caused by physical invasion and use of the easements that arose after the date of taking. Specifically, as part of its formal charge to the jury, the district court identified issues that the jury could consider in valuing the temporary easements:

> Certainly in terms of valuing temporary rental value, ***you can consider the absence of fences if there's a -- the***

26

> *absence of a dog fence, an invisible fence, the absence*
> *of -- oh, the bad condition of, I think, a feed lot has*
> *been mentioned. I think payment of hay to the horses*
> *since there's not enough grass.* Stones in the right-of-
> way, I mean, this may have a temporary effect.

(Trial Tr., JA at 1934 (emphasis added) [1218:18-24].) In doing so, the district

court impermissibly expanded the easements beyond the definition in the

Complaint and the August 4, 2014, Order to include areas where these alleged

injuries were occurring and to include harm that was not ascertainable at the date

of taking.

The district court's action manifested a clear error of law with respect to the

measure of damages. *See 79.20 Acres of Land*, 710 F.2d at 1356 (ordering new

trial where district court improperly allowed testimony regarding ruined crops,

impaired view from the property, and need for irrigation modes in areas outside of

easements); *United States v. 38.60 Acres of Land, More or Less, Situate in Henry*

*Cnty.*, 625 F.2d 196, 200 (8th Cir. 1980) (reversing district court's decision to treat

as severance damages impaired drainage and scattering of debris, because the

condemnor caused those by *using* the land, not by *taking* the property subject to the

condemnation); *United States v. Winnebago Tribe of Nebraska*, 542 F.2d 1002,

1007 (8th Cir. 1976) (finding that diminished agricultural productivity of

remainder property was not compensable as severance damage); *3,317.39 Acres of*

*Land*, 443 F.2d at 105 (damages for alleged flooding of lands beyond easement

27

area were not compensable in condemnation suit); *101.88 Acres of Land*, 616 F.2d

at 769 (holding that invasion of remainder caused by condemnor's use of land, as

well as corresponding reduction in value, were outside the scope of condemnation).

By allowing the Landowners to expand the easements, the district court

permitted the Landowners to assert a counterclaim in the middle of trial for an

additional alleged taking that was not part of the Complaint.  *See 1440.35 Acres of*

*Land*, 438 F. Supp. at 1074 ("A counterclaim, which would otherwise seem to be

an appropriate vehicle for raising a claim that the government is actually taking a

greater estate than that described in the Declaration of Taking, is therefore not

permitted by the Federal Rules of Civil Procedure."); *see also 79.20 Acres of Land*,

710 F.2d at 1356 (holding that claims for compensation based on property

damaged by use of land taken are "type of claim [that] is a counterclaim over

which the District Court has no jurisdiction in a condemnation case.").

To recover compensation for injury caused by the absence of fences, damage

to feed lots and other alternative pasture areas, and horse boarding costs—all of

which occurred outside the easement areas—the Landowners had to file a separate

action against Columbia.[15]  *See 38.60 Acres of Land*, 625 F.2d at 199 ("Of course,

if the landowner deserves compensation for other damage to the remainder, the

landowner may recover additional compensation by initiating a separate

action[.]").   Because the district court simply lacked jurisdiction to instruct the

jury concerning the damages above, the district court committed a legal error, and

the judgment should be reversed.

> B.    *Improper jury instructions resulted in double recovery to the Landowners.*

The district court's jury instructions and comments directed the jury to

provide the Landowners with double compensation.  As discussed above, the

district court instructed the jury to consider damages from ongoing construction,

such as issues with the feed lot, fences, and horse boarding, in valuing the

temporary easements.  (Trial Tr., JA at 1934 [1218:17-24]).  At the same time, the

district court also instructed the jury to assume that Columbia would do the

necessary work to resolve those issues.  Specifically, during the formal jury charge,

the district court stated:

> I know the property owners are worried about whether
> the properties are ever going to be fully restored.  And

---

[15]    On several occasions at trial, Columbia argued that the Landowners had to
bring a separate action to recover these alleged damages.  (Hr'g Tr., JA at 719-22
[3:4-6:4]; Hr'g Tr., JA at 730-66 [14:8-50:24].)  Ultimately, the court rejected the
argument and allowed the Landowners to present their case as they chose, despite
the court's recognition that this Court may reverse.  (Hr'g Tr., JA at 766 [50:20-
24].)

29

they've -- you know, you've heard evidence about that. I don't want you all to have to speculate as to when it's going to be done, how much it's going to cost to repair, to put back up the fences. There hasn't been any evidence of that.

So I'm going to ask you to assume that the property eventually will be restored. When it will be restored is entirely up to you. That's something you have to take into account in terms of the rental value for the temporary access.

*** 

So just assume that everything's going to be put back together. If it's not – if Humpty Dumpty is not put back together again, I suspect there will be another proceeding and I'll hear that.

(*Id.*, JA at 1934-35 [1218:25-1219:9; 1219:22-25].)

The district court's erroneous instructions allowed the Landowners to obtain double recovery. In addition to receiving the benefit of the restoration work Columbia was performing on their properties at the time of trial, the Landowners also recovered compensation for restoration-related issues as part of the jury's valuation of the temporary easements. Such double recovery violates the law and highlights the injustice to Columbia as a result of the district court's actions.

"It is axiomatic that the property owner must be made whole but is not entitled to more." *79.20 Acres of Land*, 710 F.2d at 1355. As a result, courts routinely reject awards that guarantee double recovery in condemnation cases. In *United States v. 2.33 Acres of Land, More or Less, Situate in Wake Cnty.*, 704 F.2d 728, 730-31 (4th Cir. 1983), this Court rejected the commissioners' award where

30

the landowner received compensation for replacement of fences, gates, and a pool, as well as the fair market value of those improvements. Specifically, this Court reasoned that "once the government pays the cost of replacing a particular improvement, it should not also have to pay the value of the taken improvement which is replaced. That would be double compensation for the landowner would be given both a surrogate for the taken improvement and its fair market value." *2.33 Acres of Land*, 704 F.2d at 730; *see also 79.20 Acres of Land*, 710 F.2d at 1355 (ordering new trial where jury provided compensation for property right for which landowners had previously received payment).

Just like the trial court in *2.33 Acres of Land*, the district court allowed the Landowners to receive the benefit of Columbia's *free* restoration work, as well as the compensation for any damaged items, calculated as value of the temporary easements. (Trial Tr., JA at 1934-35 [1218:25-1219:9].). This scenario exemplifies inappropriate double recovery. *See 2.33 Acres*, 704 F.2d at 730-31.[16]

In addition to receiving double compensation for restoration-related damages, the Landowners also recovered double severance damages for both

---

[16]     Notably, the district court conceded the potential for double recovery. Outside the presence of the jury, the district court stated that, if the jury verdict was substantial, Columbia could assume that the jury meant to provide complete compensation for restoration issues in the verdict, thus, relieving Columbia of the obligation to restore the properties. (Trial Tr., JA at 1548-49 [832:7-833:16].)

permanent and temporary easements. Specifically, the district court instructed the jury to award compensation for both temporary impacts on the fair rental value of the remainder *and* the effect of the pipeline on the fair market value of the remainder. (Trial Tr., JA at 1933-34 [1217:19-1218:15].) As a practical matter, construction issues on the Landowners' properties, such as temporary removal of fences and the need to relocate horses to other parts of the property, were caused by Columbia's construction activities in both the temporary and permanent easement areas. Thus, any assessment of damages to the remainder due to the permanent easement necessarily included compensation for these issues.

The instruction erroneously allowed the jury to assess severance damages twice. Every court determining valuation of both permanent and temporary easements has allowed only one award of severance damages. *See, e.g.*, *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cnty.*, 680 F.2d 388, 394 (5th Cir. 1982), *aff'd by United States v. 5.00 Acres of Land, More or Less, Situate in Orange Cnty., State of Texas*, 731 F.2d 1207 (5th Cir. 1984) (reversing district court's singular award of severance damages for perpetual pipeline easement and temporary work easement because no evidence existed that taking severed the property); *Guardian Pipeline, LLC v. 295.49 Acres of Land, More or Less, in Brown Cnty.*, No. 08-C-0028, 2010 WL 3386582, at *1 (E.D. Wis. Aug. 24, 2010) (determining that severance damages are appropriate as a

32

result of the permanent placement of the pipeline but not assessing additional

reduction in fair rental value of property for temporary effects of construction);

*Hardy Storage Co., LLC v. An Easement to Construct, Operate & Maintain 12-*

*Inch & 20-Inch Gas Transmission Pipelines Across Properties in Hardy Cnty.*, No.

2:06CV7, 2009 WL 900171, at *1 (N.D. W.Va. Mar. 31, 2009) (same).

Based on the foregoing, the judgment should be reversed and a new trial

ordered to avoid injustice to Columbia.

## III.    The district court abused its discretion when it refused to strike the testimony of the Landowners' expert.

At trial, the Landowners presented testimony of their only expert, Jennifer

Hanna, on valuation of the permanent easements and damages to the remainder of

the properties.  Prior to trial, Columbia filed a motion *in limine* seeking exclusion

of Ms. Hanna's opinions under *Daubert*, 509 U.S. at 579, 113 S. Ct. at 2786.

(Docket, JA at 21.)  Because Ms. Hanna employed fundamentally flawed

methodology in valuing damages to the remainder, the district court should have

granted Columbia's motion and stricken Ms. Hanna's testimony, particularly after

Columbia renewed its motion at trial.  (Trial Tr., JA at 1011 [295:11-17].)  The

district court's failure to do so is an abuse of discretion.

To be admissible under Rule 702 of the Federal Rules of Evidence, expert

testimony must rest "on a reliable foundation and [be] relevant" and it must rise

above subjective belief or unsupported assumptions.  *See Daubert*, 509 U.S. at

33

589-90, 113 S. Ct. at 2795 (1993). An expert must opine based on reliable principles and methods and must apply those principles reliably to the facts. *See, e.g.*, *Benedi v. McNeil-PPC, Inc.*, 66 F.3d 1378, 1384 (4th Cir. 1995) (holding that a proposed expert must show that "the methodology employed . . . in reaching his or her conclusion is sound").

Ms. Hanna's methodology for valuing the damage to the remainder of the Landowners' properties was unsound and against the weight of published authority. To support her opinion as to the damage to the remainder, Ms. Hanna conducted a so-called paired-sales analysis by looking at three pairs of properties where one property had a pipeline and one did not. (Trial Tr., JA at 885-86 [169:8-170:25].) A paired sale "may either be the same property sold twice, once without the characteristic at issue and once with the characteristic. . . . Or, a paired sale may be two comparable sales one of which has a point of difference and one of which does not." *United States ex rel. TVA v. Additional Rights*, 3:07-cv-00650, 2011 U.S. Dist. LEXIS 137787, at *31 (M.D. Tenn. Nov. 30, 2011); *see also* The Appraisal Institute's *The Appraisal of Real Estate* (JA at 3203-04).

Contrary to the requirements of a paired-sales analysis, Ms. Hanna did not use properties equivalent in all respects but one, and she selectively adjusted the paired properties for differences between the pairs. (Trial Tr., JA at 989-990 [273:6-274:19].) Ms. Hanna's arbitrary and non-scientific tactic biased the

outcome of her analysis to the benefit of the Landowners.  Based on her

calculations, Ms. Hanna concluded that the existence of the pipeline resulted in the

following diminution in value in the three pairs she used: (1) 16.2% for Pair A; (2)

16.7% for Pair B; and (3) 25.7% for Pair C.  (*Id.*, JA at 895; 898; 900 [179:19-25,

182:15-22, 184:19-24].)

Without any support, Ms. Hanna ignored two thirds of her own data, decided

to consider solely the reduction calculated for Pair C, and determined that a 25%

market value reduction also applied to the Landowners' properties.  (*Id.*, JA at 903;

921; 944-45; 953-54 [187:5-19; 205:5-8; 228:23-229:10; 237:22-238:2]).  Ms.

Hanna's reliance on Pair C was flawed for three reasons.  First, the properties in

Pair C were a foreclosure sale and an estate sale, which Ms. Hanna conceded do

not always represent fair market value.  (*Id.*, JA at 998-99 [282:21-283:4].)

Second, Ms. Hanna never confirmed the paired sales by calling the buying agent or

the buyers.  (*Id.*, JA at 996-99 [280:14-18; 282:21-283:4].)  Lastly, the 75- foot

pipeline easement for Pair C, which contained two pipelines, was not similar to the

50-foot, single-pipeline easement at issue here.  (*Id.,* JA at 999-1000 [283:16-

284:4].)

Although the Pair C properties did not represent fair market transfers and

bore an easement substantially different from Columbia's, Ms. Hanna gave the

most weight to Pair C and concluded that, like the encumbered property in Pair C,

35

the Landowners' properties suffered a 25% diminution in value due to the presence of the pipeline.[17]   (*Id.*, JA at 903 [187:5-19].)  Ms. Hanna cited to no studies or articles that supported her opinion that a transmission pipeline causes a 25% reduction in fair market value to the remainder.  (*Id.*, JA at 1003 [287:20-25].)

Because Ms. Hanna's paired-sales analysis suffered from several flaws, the district court should have excluded Ms. Hanna's testimony.  In *Guardian Pipeline*, the district court rejected the expert opinion of a 12% reduction in market value because the opinion relied on sales of lots with 100-foot easements versus the 50-foot easement at issue.  *See* 2010 WL 3386582, at *3-4; *see also Additional Rights*, 2011 U.S. Dist. LEXIS 137787, at *32-33 (rejecting paired-sales analysis where electric towers on subject properties and comparable properties did not have same characteristics); *Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 555 (D.N.J. 2014) (finding paired-sales analysis flawed because expert could not identify reliable practice to support weighted average of pairs); *Zarlengo v. Comm'r of Internal Revenue*, 2014 WL 3907047 at *20 (T.C. Aug. 11, 2014) (determining the expert did not adjust value for several differing characteristics and adjustments were arbitrary); *Silverman v. Borough of Allenhurst*, 2013 WL 2502974 at 6-7

---

[17]     Based on this flawed methodology, Ms. Hanna calculated severance damages as follows: (1) Boyce—$225,385; (2) Boyer—$119,207 (3) Kenney—$121,642 and $37,950; and (4) Turk—$264,229.  (Trial Tr., JA at 905, 924, 946, 958 [189; 208; 230; 242].)

(N.J.T.C. June 7, 2013) (rejecting paired-sales analysis where expert failed to provide factual support about adjustments).

The testimony of Columbia's expert further highlighted the problems with Ms. Hanna's opinion. Unlike Ms. Hanna, Mr. Thorne determined that Line MB caused no damage to the remainder of the Landowners' properties because it did not impair or change the use of the properties and did not restrict access. (Trial Tr., JA at 1642-43 [926:22-927:16].) To reach this conclusion, Mr. Thorne, among other things, researched professional publications and scholarly databases and determined that "nothing in the body of knowledge . . . support[ed] a damage to the buildings or the operations of these homes or farms." (*Id.*, JA at 1643 [927:7-12, 927:17-933:9].) Based on his research, Mr. Thorne found four articles to support his conclusion. (*Id.*, JA at 1649-52 [933:10-936:14].)

One of the articles, NATURAL GAS PIPELINES AND RESIDENTIAL PROPERTY VALUES: EVIDENCE FROM CLACKMAS AND WASHINGTON COUNTIES by Eric Fruits, Ph. D., described a comprehensive study of more than 10,000 property sales in Oregon and determined that the presence of a natural gas transmission pipeline had

no significant impact on the sales prices within one mile of the pipeline.[18]  (*Id.*, JA at 1757 [1041:10-13].)  The district court in *Guardian Pipeline* also relied on this article in rejecting expert opinion of a 12% reduction and finding that the pipeline caused only a 2% reduction in value.  2010 WL 3386582, at *7.

Ms. Hanna failed to account for the publications discussed by Mr. Thorne and relied upon by the district court in *Guardian Pipeline* and rejected those publications simply because they contradicted her analysis.  (Trial Tr., JA at 983-84; 988 [267:17-268:21; 272:3-9].)  This fact alone renders Ms. Hanna's opinions unreliable.  *See McEwen v. Balt. Wash. Med. Ctr. Inc.*, 404 Fed. Appx. 789, 791-92 (4th Cir. 2010) (upholding exclusion of expert opinion where experts failed to account for medical literature at odds with their testimony); *Marsh v. W.R. Grace & Co.*, 80 Fed. Appx. 883, 887-88 (4th Cir. 2003) (holding exclusion proper where expert failed to support his conclusion in the face of literature contrary to expert's determinations); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir.

---

[18]    Following the completion of this case below, in February 2016, Integra Realty Resources ("IRR") published a similar article analyzing the effect of natural gas transmission pipelines on property values in Ohio, Virginia, New Jersey, Pennsylvania, and Mississippi.  *See* Integra Realty Resources, *Pipeline Impact to Property Value and Property Insurability*, INGAA Foundation, Feb. 2016.  IRR concluded that "there is no measurable impact on the sales price of properties located along or in proximity to a natural gas pipeline versus properties which are not located along or in proximity to the same pipeline."  *Pipeline Impact* at iv.  Because IRR researched geographically diverse areas, it also concluded that "it was highly likely that the results and conclusions of this report would apply to other markets across the country in which natural gas pipelines were located."  *Id.*

38

2001) (affirming exclusion of expert testimony where expert's opinion conflicted with that of his colleagues).

Due to the flaws in Ms. Hanna's paired-sales analysis—as underscored by Mr. Thorne's testimony—the district court should have excluded Ms. Hanna's opinion or ordered a new trial after the jury based its award on Ms. Hanna's unreliable opinions. *See E. Tenn. Nat. Gas Co. v. 3.04 Acres in Patrick Cnty.*, No. 4:02-CV-00146, 2006 WL 197105, at *5 (W.D. Va. Jan. 24, 2006) (ordering new trial because "[s]imply put, $770,544 is an outrageous award for the property that was taken by the Plaintiff and the resulting damage to the residue"). The district court's failure to do so was an abuse of discretion and should be reversed.

## IV. The jury verdict cannot stand because insufficient evidence existed to support permanent and temporary severance damages.

While courts afford jury verdicts in condemnation cases a measure of deference, a new trial is required when a jury enters an award "which is clearly erroneous, based upon misapplication of the law, unsupported by the evidence or contrary to the clear weight of the evidence." *10,031.98 Acres of Land*, 850 F.2d at 635 (citation omitted). In condemnation cases, "the trial court has an independent obligation, to a reasonable extent to see that the landowner's claim is submitted only on competent evidence." *Id.* at 637-38 (citation omitted).

The district court failed to fulfill this obligation when it accepted the jury's award of severance damages to the Landowners. Indeed, the district court should

39

have rejected the verdict because no substantial evidence existed in support thereof.  As the following points demonstrate, the jury could only speculate as to the severance damages it awarded the Landowners.

First, the Kenneys failed to offer expert testimony regarding the alleged loss of value of Mrs. Kenney's undeveloped lot.  Second, the Landowners offered no expert opinion or evidence on the value of the temporary easements or any separate temporary severance damages, and the lay testimony they did provide on that issue lacked probative value.  Third, the Landowners presented no evidence of the cost to repair the alleged restoration issues.

Although courts in condemnation cases generally admit landowner testimony concerning property value, such testimony cannot support a jury verdict if it lacks probative value.  *Brannon v. State Rds. Comm'n,* 305 Md. 793, 802, 506 A.2d 634, 637 (1986).  While a landowner "may testify as to the value of his property and the diminution in value thereof," not all landowner opinions are credible or admissible.  *See id.* at 638 (citation omitted) ("Where the owner's opinion is derived from a course other than his familiarity, his testimony may constitute grounds for objection.").

Furthermore, a landowner "must have some knowledge of land values in the neighborhood of that which he is asked to value . . . otherwise his valuation would not be a reasoned opinion but a mere conjecture or guess."  *Hall v. Lovell Regency*

*Homes Ltd. P'ship*, 121 Md. App. 1, 20, 708 A.2d 344, 353 (1998) (quotations omitted); *see also Miller*, 317 U.S. at 375, 63 S. Ct. at 280 (noting the importance of landowner's knowledge of recent sales in the vicinity of the property to avoid relying on a mere guess). "[I]f an owner's testimony reveals that his or her valuation is not based on market value, the testimony lacks probative value and is irrelevant." *Exxon Mobil Corp. v. Ford*, 204 Md. App. 1, 149, 40 A.3d 514, 601 (2012) (J. Eyler, J., concurring and dissenting).[19]

A.    *The Kenneys failed to offer expert testimony regarding loss of development potential and property value.*

At trial, the Kenneys opined that the installation of the pipeline rendered Lot 3 useless and without value. (Trial Tr., JA at 1182; 1199 [466:11-18; 483:9-20].) The Kenneys, however, did not submit credible evidence concerning permanent remainder damages because they were not qualified to opine on development potential. While lay witnesses may offer opinions under Rule 701 of the Federal Rules of Evidence, this rule "generally does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and

---

[19]    The Court of Special Appeals in this case did not reach a single majority opinion but, instead, issued separate concurring and dissenting opinions where different combinations of judges formed the majority on different issues. On appeal, the Court of Appeals affirmed, in part, and reversed, in part, the majority opinion. *See Exxon Mobil Corp. v. Ford*, 433 Md. 426, 71 A.3d 105 (2013). Nonetheless, the Court of Appeals cited Judge James Eyler's opinion on property damages with approval. *Id.* at 483-91, 71 A.3d 139-44.

which require the special skill and knowledge of an expert witness." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 2003 (4th Cir. 2000).

Whether a property has development potential requires engineering expertise and an understanding of the relevant property and market conditions, zoning requirements, and other specialized information. Expert testimony is, therefore, necessary to analyze development potential because "most jurors would not be sufficiently versed in engineering . . . or construction" to be aware of it by virtue of common experience. *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 109 Md. App. 217, 257, 674 A.2d 106, 125-26 (1996); *see also Jones v. Reichert Jung, Inc.*, 211 F. Supp. 2d 661, 668 (D. Md. 2002) (requiring expert testimony for matters such as engineering).

Where a landowner's opinion as to property value is based on something requiring expert testimony, lay opinion on that issue is not credible. In *Exxon Mobil Corp.*, the Maryland Court of Appeals determined that landowner testimony could not support a verdict concerning loss of property value due to contamination because a "landowner who testifies as to the value of his or her property is not opining as to market value but rather is opining as the effect of the contamination of the landowner's property." 433 Md. at 490, 71 A.3d at 143; *see also Ray v. Mayor of Baltimore*, 430 Md. 74, 99, 59 A.3d 545, 559-60 (2013) (finding that

landowner's opinion as to value that is based on speculation concerning future use and development is not competent testimony).

In addition to the testimony concerning the developability of Lot 3, the district court also improperly allowed Dr. Kenney to opine that a prospective buyer would not buy Lot 3.  ([523:19:524:8], JA at 1239-40.)  Where an owner's valuation is based on the owner's belief that "no one would buy the property," it is not a valuation based on market value.  *See Exxon Mobil Corp.*, 204 Md. App. at 150, 40 A.3d at 602.  Thus, the Kenneys' improper opinion testimony is not competent evidence and cannot support the jury verdict of $130,668 in damages to the remainder of the Kenneys' property.  (Verdict, JA at 2152-53.)

B.    *Evidence offered in support of temporary severance damages on the Boyces' properties lacked probative value.*

The measure of damages for a temporary easement is the rental value of the property subject to the easement for the duration of the temporary easement. *Kimball Laundry Co.*, 338 U.S. at 7, 69 S. Ct. at 1438.  At trial, the parties did not present evidence as to the rental value of either the temporary easement as defined by Columbia, or the Landowners' entire parcels as instructed by the district court.

Additionally, Mr. Boyce's opinion on the value of the temporary easement cannot support the jury's verdict for that easement.  Mr. Boyce opined that he and his wife were entitled to recover $182,500 for the temporary easement on their property.  That easement, in Mr. Boyce's opinion, represented the Boyces' entire

43

front pasture. (*Id*., JA at 1141-43 [425:25-427:7].) The Boyces' demand consisted of horse boarding costs for two and one half years on a nearby farm due to the alleged inability to use their front horse pasture during construction and restoration. (*Id*., JA at 1068-69; 1141-43 [352:17-353:4; 425:25-427:7].) Mr. Boyce's testimony, however, cannot support the jury's award of $50,104 for the temporary easement.

At the outset, Mr. Boyce confirmed that he did not incur the cost of $182,500 to board the horses because the Boyces kept the horses on their property throughout the construction and restoration process in both the temporary and permanent easements. (*Id*., JA at 1150-51 [434:20-435:8].) Absent an actual expense, Mr. Boyce—despite Columbia's objection—based his calculations exclusively on a prior settlement offer from Columbia to pay to board the horses. (*Id*.) Because a prior settlement offer is not competent evidence, no other evidence exists to support the jury's award of damages for the temporary easement on the Boyces' property. *See State Rds. Comm'n v. Kuenne*, 240 Md. 232, 235, 213 A.2d 567, 568 (1964) (rejecting landowner's opinion of value based on a settlement offer); *Exxon Mobil Corp.*, 204 Md. App. at 149, 40 A.3d at 601 ("[T]he owner's valuation must be based on *market value*—not some other value.") (emphasis in original).

44

C.    *The Landowners did not offer any evidence regarding the cost of repair of any construction issues.*

At trial, the district court instructed the jury to determine the impact of certain construction issues on the fair rental value of the Landowners' properties. (Trial Tr., JA at 1934 [1218:18-24].)  The Landowners, however, neither testified about specific remediation costs, including the cost to repair fences or equestrian facilities nor addressed any other issues caused by Columbia's construction and restoration process.  The district court even expressed concerns about this failure and noted that the jury could only speculate as to the amount of those costs.  (Id., JA at 1902 [1186:2-9]; *see also id.,* JA at 1935 ("I don't want you all to have to speculate as to when it's going to be done, how much it's going to cost to repair, to put back up the fences. There hasn't been any evidence of that.") [1219:2-5].)

Notwithstanding its concerns, the district court allowed the jury to include these speculative costs in its valuation and assessment of compensation for the temporary easements.  Because "detailed proof" is necessary to value a temporary taking, the speculative costs of restoration did not constitute sufficient evidence upon which the jury could have justifiably based its verdict.  *See United States v. Gen. Motors Corp.*, 323 U.S. 373, 383, 65 S. Ct. 357, 362 (1945).

For the foregoing reasons, the jury's award for temporary easement value and damages to the remainder found no support in the evidence and cannot stand. This Court should reverse the judgment and order a new trial held only on

45

competent evidence within the bounds of the district court's subject matter jurisdiction.

## CONCLUSION

This Court should reverse and remand this case for a new trial on just compensation.

## ORAL ARGUMENT STATEMENT

The issues presented for appeal warrant argument, as the district court exceeded the subject matter jurisdiction of an eminent domain action under established federal law. The district court improperly injected multiple factual disputes into the trial record, provided legally incorrect instructions to the jury, and made erroneous evidentiary rulings, the result of which is judgment that is inherently invalid.

Dated: April 25, 2016                    Respectfully submitted,

Richard D. Holzheimer                   Jessica D. Fegan
Anastasia P. Cordova                    McGuireWoods LLP
McGuireWoods LLP                        2001 K Street, Suite 400
1750 Tysons Boulevard, Suite 1800       Washington, D.C. 20006
Tysons Corner, VA 22102                 (T) (202) 857-1728
(T) (703) 712-5000                      (F) (202) 828-3328
(F) (703) 712-5281                      *jfegan@mcguirewoods.com*
*rholzheimer@mcguirewoods.com*
acordova@mcguirewoods.com


Tennille J. Checkovich                  Arnold M. Weiner
McGuireWoods LLP                        Barry L. Gogel

46

800 East Canal Street
Richmond, VA 23219
(T) (804) 775-4758
(F) (804) 440-7770
*tcheckovich@mcguirewoods.com*

Rifkin, Weiner, Livingston, Levitan &
Silver, LLC
2002 Clipper Park Road, Suite 108
Baltimore, MD 21211
(T) (410) 769-8080
(F) (410) 769-8811
*aweiner@rwlls.com*
*bgogel@rwlls.com*

*Counsel for Columbia Gas
Transmission, LLC*

47

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

- This brief contains __11,144__ words, excluding the parts of the brief exempted by F.R.A.P. 32(a)(7)(B)(iii).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a) because:

- This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14 point font.

/s/ *Anastasia P. Cordova*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 25th day of April, 2016, I electronically filed the foregoing Brief with the Clerk of the Court for the Fourth Circuit Court of Appeals using the CM/ECF System, which will send notification of electronic filing to all counsel of record who are registered CM/ECF users.


<u>*/s/ Anastasia P. Cordova*</u>